IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA AHRENS, individually and as TRUSTEE OF PATRICIA AHRENS REVOCABLE LIVING TRUST Dated April 4, 2007,<br><br>    Plaintiff/Applicant,<br>vs.<br><br>SWINBURNE & JACKSON, LLP<br><br>    Defendant/Third Party<br>    Plaintiff/Debtor,<br><br>vs.<br><br>NICHOLAS WAYNE BORUSIEWICH and<br>BORUSIEWICH & COLE, P.C.<br><br>    Third-Party Defendants/Debtors,<br><br>CAMICO MUTUAL INSURANCE COMPANY<br><br>    Garnishee. | Cause No. 4:15-cv-00130-JAR |

**REPLY MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL PRODUCTION OF CLAIMS FILE**

### I. Introduction

This is a garnishment proceeding in which Patricia Ahrens seeks to enforce a judgment against Borusiewich & Cole P.C. and Nicholas Borusiewich. The judgment debtors are accountants who were insured under a policy of professional liability insurance issued by

CAMICO Mutual Insurance Company. The amount of the judgment is greater than the coverage limitation stated in the policy. CAMICO refused to provide its insureds with a defense. The premise of Mrs. Ahrens' action to enforce the judgment in its entirety under the insurance sold by CAMICO is that the company's refusal to defend its insureds was wrongful. Under Missouri law, an insurance company's wrongful failure to defend its insured renders the company liable for the resulting judgment against the insured. *Schmitz v. Great American Assurance Co.,* 337 S.W.3d 700, 710 (Mo. 2011). Further, the company's liability is for the ensuing judgment in its entirety, without regard to any limitation of coverage specified in its insurance policy. *Columbia Casualty Co. v. HIAR Holding, LLC,* 411 S.W.3d 258, 273-74 (Mo. 2013).

In the present motion Mrs. Ahrens seeks an order compelling CAMICO to produce all of the content of its claims file. She expects the content of the claims file to reflect the nature and extent of the company's investigation of the claim that it refused to cover or defend, the information that it did obtain in that process—and, by its absence, to indicate information that it did not obtain, perhaps through intentional avoidance, sloth, or inadvertence—and considerations and processes through which it reached its coverage decision.

Contrary to CAMICO's argument in opposition to this motion, those records either will be relevant in themselves or likely to lead to the discovery of evidence relevant to issues in this case. For the most part, those issues have been injected into the case by CAMICO itself.

## II. Applicable Discovery Principles

"The federal discovery rules were designed to provide each party with the fullest pre-trial knowledge of the facts and to clarify and narrow the issues to be tried." *Nutt v. Black Hills Stage Lines, Inc.,* 452 F.2d 480, 483 (8th Cir. 1971). In particular Rule 26 provides that discovery should be allowed "regarding any nonprivileged matter that is relevant to any party's claim or

defense." Fed. R. Civ. P. 26(b)(1). That rule "is widely recognized as a discovery rule which is liberal in scope and interpretation." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). The standard for relevance in the context of discovery is broader than in the context of admissibility, and information that may "bear reasonably on the issues in the case" ought to be produced. *Id.*

### III. The Claims File Materials Will Be Relevant to the Preclusion Issues Before This Court

CAMICO contends that its claims file is not discoverable in part because Mrs. Ahrens "has not, and cannot, establish a substantial need for these documents because they are irrelevant" to any issue before this Court. Poppycock. A central issue in this proceeding will be the identification of issues that CAMICO is precluded from contesting. Mrs. Ahrens has made her intention to invoke state law preclusion principles in this case, and CAMICO has made it equally clear that it intends to make an issue of preclusion.

Missouri law governs issue preclusion in this diversity case. *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617-18 (8th Cir. 1994). Under Missouri law an insurer that violated its duty to defend its insured is barred from relitigating issues in a garnishment proceeding that were material to and decided through the trial that ensued. *See, e.g., Schmitz*, 337 S.W.3d at 709-10. The claims file sought by Mrs. Ahrens in this motion will be chockfull of information pertinent to the determination of whether CAMICO violated that duty and thus is precluded from challenging the material findings of the state court in this proceeding.

Missouri law makes it clear that "[t]he duty to defend is broader than the duty to indemnify." *McCormack Baron Management Services, Inc. v. American Guarantee & Liability Insurance Co.*, 989 S.W.2d 168, 170 (Mo. 1999). Further, an insurance company's duty to defend "arises whenever there is a potential or possible liability to pay based on the facts at the

3

outset of the case" and "is determined by comparing the language of the insurance policy with the allegations in the complaint." Id. In Missouri an insurer has a duty to defend its insured "whenever there is a potential or possible liability to pay based on the facts at the outset of the case." *McCormack Baron Management Services,* 989 S.W.2d at 170. "To extricate itself from a duty to defend the insured, the insurance company must prove that there is no possibility of coverage." *Truck Insurance Exchange v. Prairie Framing, LLC,* 162 S.W.3d 64, 83 (Mo. Ct. App. 2005). An insurer may not base its coverage and defense decision solely on facts alleged in the plaintiff's petition, and rather is accountable for knowledge of any other facts that "it . . . could have reasonably ascertained" when making its defense and coverage determinations. *Stark Liquidation Co. v. Florists' Mutual Insurance Co.,* 243 S.W.3d 385, 392 (Mo. Ct. App. 2007).

It would be unreasonable to believe that the content of CAMICO's claims file will be irrelevant to determining whether the company breached its duty to defend its insured. Again: if CAMICO's breached its duty to defend its insureds in the underlying state case, *Schmitz* and *Columbia Casualty* and other unequivocal Missouri authority will bind the company to the state court's material findings and preclude it from relitigating those issues in this Court. And CAMICO has made it perfectly clear that it seeks to relitigate numerous matters that were determined in and central to the state court's judgment.

### IV. CAMICO's Unilateral and Erroneous Declaration That the Insurer-Insured Relationship Became Adversarial on May 2, 2013, and That All Subsequent Records Constitute Work Product

CAMICO insists that any information created after May 2, 2013, is protected by the work product privilege. Sugg. Opp. Mot. Compel at 3-6. The rationale of this argument is that the company made its decision to decline coverage on that date, that this purported decision rendered the relationship between insurer and insured "adversarial," and that everything created or

4

accumulated thereafter necessarily was prepared "in anticipation of litigation." This argument also is untenable.

First, there is ample documentation of the company's ongoing evaluation and re-evaluation of its position regarding coverage after May 2, 2013. One example: Ruth Pallasch, whom CAMICO has identified as the primary claims executive responsible for evaluating the Borusiewich & Cole request for indemnification and a defense, sent a letter to counsel for Borusiewich on August 30, 2013, indicating ongoing consideration of the matter. CAMICO 00256. Another example: in email correspondence with Gregg Cole, principal of Borusiewich & Cole, Ms Pallasch made it clear that she was continuing to evaluate the claim. CAMICO 00269. Yet another example: on October 28, 2013, Ms Pallasch sent a "coverage letter" to counsel for Borusiewich & Cole, in response to counsel's inquiry dated September 12, 2013, advising that CAMICO was denying coverage and refusing to provide its insured with a defense. CAMICO 185-189.[1]

Second, the Court should reject CAMICO's blanket insistence that every record created after the date of its purported internal decision to deny coverage is protected by the work product privilege. The Eighth Circuit has articulated the correct test for identifying protectable work product:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

---

[1] Copies of these documents are attached to this memorandum as exhibits.

*Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir. 1987) (citing 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2024, at 198-99 (1970)).  The Court has recognized particular limitations on the privilege claimed by CAMICO:

> Documents are not protected under the work product doctrine . . . merely because the other party transferred them to their attorney [or] litigation department . . . Nor are documents protected that were assembled in the ordinary course of business or for other nonlitigation purposes.

*Petersen v. Douglas County Bank & Trust Co.,* 967 F.2d 1186, 1189 (8th Cir. 1992).  Finally, "[t]he work product doctrine is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." *Pittman v. Frazer,* 129 F.3d 983, 988 (8th Cir. 1997).

CAMICO has provided this Court with zero basis for believing that every document placed in its claims file after May 2, 2013, was prepared by an attorney, or with attorney involvement, or in anticipation of litigation with the insureds.  Rather the Court has good reason to believe that all or many of the documents prepared both before and after the "adversarial" date unilaterally fixed by CAMICO were prepared in the ordinary course of the company's claim processing business:

> Courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection.

*Falkner v. General Motors Corp.,* 200 F.R.D. 620, 623 (S.D. Iowa 2001) (quoting *Piatkowski v. Abdon Callais Offshore LLC,* 2000 WL 1145825 at *2 (E.D.La. Nov. 9, 2000)); *see also Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105, 114 (2008) (noting that "claims processing [is] an ingredient of the insurance company's product"); *Lamar Advertising of South*

*Dakota, Inc. v. Kay,* 267 F.R.D. 568, 577 (D.So.Dak. 2010) (recognizing that "the routine and ordinary course of business of an insurance company includes claims investigation").

It is singularly unreasonable for an insurance company to take the position that everything it does after purportedly making an internal decision to deny coverage is done in preparation for litigation with its insured. *Falkner* held:

> [I]f the party asserting the privilege cannot make a factual showing that the primary purpose of the insurance investigation was in anticipation of litigation, the court may conclude that the investigation was conducted in the ordinary course of investigating a potential insurance claim.

200 F.R.D. at 623. In lieu of any factual showing CAMICO has simply postulated that any record in its claims file that was generated after its own internal declaration of war is not discoverable. The company's conceptions of the work product privilege and arrogation of authority cannot be squared with the discovery rules or with Circuit precedent. This Court should reject CAMICO's position.

### V. Conclusion

CAMICO contends that all material placed or accumulated in its claims file after May 2, 2013, necessarily was prepared in anticipation of litigation. It has made no particularized showing that any such document actually was prepared in anticipation of litigation rather than in the ordinary course of its claims investigation business. The global rule proposed by CAMICO for the insulation of any record created after the date upon which coverage purportedly was denied cannot be reconciled with the liberal policies of the federal discovery rules.

The Court should decline to authorize the withholding of documents that are so likely to be or to lead to the discovery of relevant evidence on the basis of the undifferentiated and self-serving rule proposed by CAMICO. Having failed to demonstrate that a single one of the

documents it seeks to withhold actually was prepared in anticipation of litigation, CAMICO should be directed to produce its claims file as requested by Mrs. Ahrens.

LAW OFFICES OF TED F. FRAPOLLI

By: _____

Ted F. Frapolli, #MO26873 / #FED10480
275 N. Lindbergh, Suite F
St. Louis, MO 63141
314-993-4261 phone
314-993-3367 fax
Ted@tffrapollilaw.com

*Attorney for Plaintiff/Applicant Patricia Ahrens, individually and as Trustee of Patricia Ahrens Revocable Living Trust dated April 7, 2007*

MICHAEL GROSS LAW OFFICE
Michael Gross, #MO23600 Local Court No. 9778
231 S. Bemiston Ave., Suite 250
St. Louis, MO 63105
314.863.5887 – telephone
mgross@grossbriefs.com

*Co-Counsel for Plaintiff-Applicant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed and served via the court's electronic filing system this 19th day of November, 2015, upon:

Timothy J. O'Leary
Aaron D. French
Stephen M. Murphy
Sandberg Phoenix & von Gontard, P.C.
600 Washington Ave., 15th Floor
St. Louis, MO 63101
314.241.7604 (facsimile)
toleary@sandbergphoenix.com
smurphy@sandbergphoenix.com
*Attorneys for Garnishee CAMICO Mutual Insurance Company*

_____
Ted F. Frapolli